COMMONWEALTH *vs.* JOSEPH G. IANELLI. February 27, 1984. *Arson. Witness,* Immunity, Impeachment. *Practice, Criminal,* New trial, Argument by prosecutor, Instructions to jury. *Evidence,* Impeachment of credibility.

Ianelli was indicted, together with two codefendants, for arson of a building at 4-8 Cambridge Street, Cambridge. He individually was indicted for burning a building with intent to defraud an insurer. The judge ordered required findings of not guilty for the two codefendants, but denied Ianelli's motion for such a finding. Ianelli was found guilty on both indictments. These appeals are from his convictions and from the denial of his motions for a new trial.

1. On September 6, 1977, about 11:05 P.M., smoke was observed rising from Lechmere Wines Co., Inc. (Wines), a business owned by Ianelli. The fire department arrived about 11:15 P.M. There was evidence from which the following circumstances could be found. "[T]his fire was set," as Ianelli concedes in his brief. The premises had been closed about 11:00 P.M. Ianelli's automobile was seen about 10:50 P.M. in a parking lot near the burned building. Fire insurance of $150,000 was carried on the building's contents and $100,000 upon the building, which Ianelli had bought for $50,000. In it he had invested $40,000. The insurance was near the maximum permissible coverage of $300,000. The building had been for sale for five years. Ianelli had one of the few keys to the second floor where the fire was set. Wines had incurred business losses and had faced increased competition during some years prior to the fire. There was conflicting evidence about Ianelli's need for funds when the fire occurred and some evidence that he owned real estate of substantial value. On the evidence and the reasonable inferences which could be drawn, the trial judge correctly denied Ianelli's motion for a required finding of not guilty under each indictment. See *Commonwealth* v. *Bader*, 285 Mass. 574, 577 (1934); *Commonwealth* v. *Rhoades*, 379 Mass. 810, 815 (1980); *Commonwealth* v. *Walter*, 10 Mass. App. Ct. 255, 257, 260 (1980); *Commonwealth* v. *Ward*, 14 Mass. App. Ct. 37, 40-41 (1982), and cases cited. See also *Commonwealth* v. *Shuman, ante* 441, 446 (1984).

2. The trial judge justifiably refused to immunize the two codefendants under G. L. c. 233, § 20F, after required findings of not guilty had been entered for them. *Commonwealth* v. *Curtis*, 388 Mass. 637, 642-646 (1983). See *Commonwealth* v. *Upton*, 390 Mass. 562, 575-577 (1983). See also part 3, *infra*. Under the proviso to § 20F, he himself had no statutory authority for such action. There then remained pending indictments for conspiracy against them, prosecution of which would not have been barred by the required findings on the substantive offenses. See *Commonwealth* v. *Benson*, 389 Mass. 473, 479-480, cert. denied, 464 U.S. 915 (1983).

3. There was no reversible error in the judge's refusal to grant Ianelli, upon his motions for a new trial, an evidentiary hearing based upon the testimony which his former codefendants might then give. It was uncertain (a) whether they would testify if not immunized even though each of the conspiracy indictments by then had been dealt with by a nolle prosequi, and (b) whether they, as defense witnesses, would be immunized by any court. The trial judge reasonably could have expected the evidence, as then disclosed to him, to be essentially cumulative and corroborative of Ianelli's own testimony at trial. The transcript of the hearing on the motions shows that the trial judge was informed, although not by affidavits, of the substance of the probable evidence. In his discretion, he warrantably could conclude that no evidentiary hearing was necessary. See *Commonwealth* v. *Stewart*, 383 Mass. 253, 257 (1981); *Commonwealth* v.

Rescript Opinions.

*Toney,* 385 Mass. 575, 579-582 (1982); Mass.R.Crim.P. 30(b) and (c)(3), 378 Mass. 900-901 (1979). See also the *Shuman* case, *supra* at 448.

4. The trial judge was not required to grant a new trial because of the prosecutor's closing arguments to the jury.

(a) No objection at trial was made to the following aspects of a some-what emotional peroration in the prosecutor's argument and submission to the jury. This proceeded in part: "I *submit* to you that this defendant started that fire . . . . I *submit* to you that this man . . . owes a debt to every fireman who risked his life to put that fire out . . ." (emphasis supplied). The word "submit" is a traditional equivalent of "contend" or "argue" and should not be taken to imply any expression of the speaker's own opinion. See *Commonwealth* v. *Stone,* 366 Mass. 506, 516 n.4 (1974); *Commonwealth* v. *Daigle,* 379 Mass. 541, 550 (1980); Black's Law Dictionary 1278 (5th ed. 1979). Certainly, in most cases of arson as a matter of common knowledge, fire fighters (who are not "victims" of the fire in any usual sense) and other members of the public may be caused to assume risks. The remark involved no inaccurate statement of evidence. If left unsaid, it would have avoided argument as to its possible impropriety. It falls short of remarks discussed in *Commonwealth* v. *Fitzgerald,* 376 Mass. 402, 423-424 (1978). Compare *Commonwealth* v. *Smith,* 387 Mass. 900, 909-910 (1983). The judge's general instructions were adequate to counteract this argument if excessive.

(b) Comments (viewed as a whole) of the prosecutor on Ianelli's failure to call other members of his family as witnesses to contradict adverse testimony (about the presence of Ianelli's automobile in a parking lot near the time and scene of the fire) were permissible. *Commonwealth* v. *Niziolek,* 380 Mass. 513, 517-519 (1980). See *Commonwealth* v. *Happnie,* 3 Mass. App. Ct. 193, 194-198 (1975). The judge gave correct instructions which appropriately dealt with the prosecutor's inquiry and comment.

5. There was no error in admitting evidence of Ianelli's tax returns through his accountant. *Couch* v. *United States,* 409 U.S. 322, 335-336 (1973). See and compare *Finance Commn. of Boston* v. *McGrath,* 343 Mass. 754, 766-768 (1962), and authorities there cited. See also discussion in *Opinions of the Justices,* 328 Mass. 663, 665-667 (1952), and *Commonwealth* v. *Garabedian,* 8 Mass. App. Ct. 442, 446 (1979). General Laws c. 62C, § 74, inserted by St. 1976, c. 415, § 22, specifically authorizes a court to order production of tax information in the manner here employed. Section 74 was derived from G. L. c. 62, § 58A, inserted by St. 1972, c. 453, and is in much the same language. Section 58A was repealed by St. 1976, c. 415, § 100. Ianelli cannot contend reasonably that § 74 was designed by the Legislature to offset the *Couch* case, decided in 1973. Contrast the legislative history of another statute discussed in *Commonwealth* v. *Toole,* 389 Mass. 159, 160-162 (1983). See *Commonwealth* v. *Wilson,* 389 Mass. 115, 118-119 (1983).

6. Robert Stubbs, an expert called by the prosecution, had testified to chromatograph tests of samples from the burnt building to determine whether they revealed the probable presence of accelerants. The tests indicated such presence in seven of twelve samples and "traces" too small to identify in five samples. Cross-examination brought out that, when the tests were made, Stubbs was employed by a corporation of which Dennis Michaelson was the owner and supervisor. Stubbs made reports to Michaelson on samples the latter asked him to test. Michaelson usually wrote the reports in arson cases. Stubbs testified that "the only thing" in Michaelson's report which he saw as "inconsistent at all" with the opinions to which he (Stubbs) had testified related to the degree of emphasis placed on tests labelled by Stubbs as "trace." Stubbs "indicated there were trace amounts . . . which were of some resemblance to gasoline as opposed to . . . Michaelson's report which indicated a positive aspect to the trace quantities." Defense counsel started to ask a question about a conversation in which Stubbs was supposed to have engaged. At a bench conference, after an objection, defense counsel indicated that the question was designed to bring out "what in fact was actually given [to Stubbs] for directions." The judge remarked that he did not perceive any basis of impeachment of the witness "except possibly some remote bias." The judge was then told that the inquiry concerned an alleged conversation by Stubbs with a reporter for the Chicago Tribune. Counsel then stated that, if Stubbs admitted the conversation, Stubbs would be asked whether he had said (verbatim as in the transcript) "Michaelson manipulated results, but when a sample I was testing came up negative for accelerant, he would have me run it again and again, further no matter what I came up with, the final determination was" Michaelson's. The headline of the article (perhaps in the Tribune, although the transcript does not make this clear) was said by counsel to be "Expert on arson admits he lied about his credentials."

Further cross-examination of Stubbs proceeded for a considerable time without apparent further effort by counsel to lay a foundation for additional inquiry about Michaelson's instructions to Stubbs or about the alleged conversation. The record and any offer of proof are far too confused and indefinite to show (even after examination of the whole of Stubbs' testimony) any inappropriate impediment by the judge to proper cross-examination of Stubbs, sufficient to meet Ianelli's burden of establishing that the judge abused his discretion to control cross-examination reasonably. See *Commonwealth* v. *Underwood,* 358 Mass. 506, 513 (1970); *Commonwealth* v. *Jones,* 9 Mass. App. Ct. 103, 116-117 (1980), rev'd on other grounds, 382 Mass. 387 (1981), and cases cited.

7. The charge (to which there was no objection at trial relevant to any point now pressed), viewed as a whole, was thorough and reasonably avoided confusion of the civil burden of proof with proof beyond a reasonable doubt. The concept of "reasonable doubt" was explained in the

language of *Commonwealth* v. *Webster,* 5 Cush. 295, 320 (1850). We perceive no trivialization of the concept by illustrations of the type criticized in *Commonwealth* v. *Ferreira,* 373 Mass. 116, 129-130 (1977), and most recently in *Commonwealth* v. *Rembiszewski,* 391 Mass. 123, 127-135 (1984). Compare *Commonwealth* v. *Bowden,* 379 Mass. 472, 484 (1980).

8. There was substantial confusion attendant upon whether the trial judge seasonably filed his findings and rulings in connection with the denial of a new trial. We do not strike them from the appendix to the Commonwealth's brief. This opinion, however, does not rely upon them in order to avoid unnecessary and time consuming consideration of further questions of procedure.

9. The judgments and the denial of the motions for a new trial are affirmed. In view of the decision in *Commonwealth* v. *Shuman, supra* at 449-452, decided January 27, 1984, the trial judge, upon suitable motion, may revise (but not increase) the sentences imposed to avoid any impropriety based upon the duplicitous character of charges under G. L. c. 266, § 2 and § 10, respectively, mentioned in the *Shuman* case.

*So ordered.*

*Henry P. Sorett* for the defendant.

*Patricia A. McEvoy,* Assistant District Attorney (*Margot Botsford,* Assistant District Attorney, with her) for the Commonwealth.