COMMONWEALTH *vs.* AARON LOUIS PATTEN, THIRD.

Middlesex.   September 9, 1987. — October 8, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & LYNCH, JJ.

*Homicide. Due Process of Law,* Delay in commencement of prosecution. *Practice, Criminal,* Delay in commencement of prosecution, Preservation of evidence, Mistrial. *Constitutional Law,* Double jeopardy. *Jury and Jurors.*

In a criminal case, the judge properly denied the defendant's motion to dismiss the indictment on the ground of preindictment delay, where the slightly more than ten years elapsed between the crime and the indictment was not demonstrated to be prejudicial to the defendant's position nor to be the result of intentional or reckless governmental conduct. [21-22]

No facts supported a criminal defendant's claim that the prosecutor intentionally goaded him into moving for a mistrial, and thus double jeopardy principles did not bar the defendant's retrial after a mistrial had been declared. [23]

At the trial of a criminal case, the judge did not err by waiting until the close of the evidence to excuse, on the defendant's motion, a juror who in the course of the trial revealed his acquaintance with a prosecution witness, where there was no evidence of impropriety on the part of the juror. [24-25]

INDICTMENT found and returned in the Superior Court Department on March 22, 1983.

The case was tried before *Hiller B. Zobel,* J.

*Michael R. Pinta* for the defendant.

*Natalea Skvir,* Assistant District Attorney, for the Commonwealth.

WILKINS, J. On December 20, 1972, Edward J. Donovan, manager of the cocktail lounge in the Holiday Inn on Massachusetts Avenue in Cambridge, was shot and killed in the course of an attempted armed robbery. One George E. Clark was identified as one of the two men who participated in the

crimes. In 1977 Clark was convicted of the murder in the first degree of Donovan.[1] The other participant was not then identified. In 1983, in anticipation of a recommendation that his sentence be reduced, Clark identified the defendant as the other participant and agreed to cooperate at his trial. The defendant was indicted on March 22, 1983. He was tried and convicted in April, 1984, of murder in the first degree.

The case against the defendant was strong. There was evidence that his fingerprints were found on an empty beer bottle and on top of the bar in the lounge. He has scars which are consistent with bullet wounds for which a man was treated at the Chelsea Naval Hospital later on the night of the murder. A ballistics expert identified a bullet removed from that patient as having been fired from the victim's gun. We need not recite the evidence in greater detail in order to present and resolve the issues in this case.

The defendant argues that (1) there was prejudicial preindictment delay; (2) his pretrial motion to dismiss on grounds of double jeopardy should have been allowed; (3) he was denied his right to a fair trial when the judge delayed in dismissing a juror who, during the trial, volunteered that he knew a witness; and (4) the judge's rulings on certain issues denied the defendant due process of law and entitle him to relief under G. L. c. 278, § 33E. We reject all these arguments and affirm the conviction.

1. The judge properly denied the defendant's motion to dismiss the indictment. To meet his burden of showing that preindictment delay denied him due process of law under the State or Federal Constitutions a defendant must prove both that the delay prejudiced his case and that the government intentionally or recklessly caused that delay. *Commonwealth v. Best,* 381 Mass. 472, 484 (1980). *Commonwealth v. Imbruglia,* 377 Mass. 682, 688, 691 (1979). See *United States v. Lovasco,* 431 U.S. 783, 795-796 & n.17 (1977); *United States*

---

[1] See *Commonwealth v. Clark,* 378 Mass. 392 (1979), where the circumstances of the crime and certain subsequent events are set forth in much the same manner as they were presented at the trial of this case.

v. *Marler*, 756 F.2d 206, 213 (1st Cir. 1985). The defendant made no adequate showing in support of his claim that the Commonwealth recklessly caused prejudicial delay.

This case involves a substantial interval of slightly more than ten years between the murder and the indictment. It involves, however, neither demonstrated prejudice to the defendant's position arising from that delay nor demonstrated reckless governmental conduct causing the delay. The defendant asserts that he was prejudiced because the prosecution could not produce certain items of possible significance: two glasses from which the robbers drank beer while in the lounge; X-rays of the man who was treated on that night at the Chelsea Naval Hospital; a composite drawing of the man who shot Donovan, made with the assistance of the bartender; and arrays of photographs used by certain eyewitnesses to identify certain characteristics of the robbers. None of the eyewitnesses who testified identified the defendant.

On the record before the judge, the missing evidence was as likely to have been inculpatory as exculpatory. A defendant must show, on concrete evidence, and not simply by a fertile imagination, a reasonable possibility that access to the lost items would have produced evidence favorable to his cause. See *Commonwealth* v. *Willie*, 400 Mass. 427, 433 (1987). See also *United States* v. *Agurs*, 427 U.S. 97, 109-110 (1976); *Commonwealth* v. *Charles*, 397 Mass. 1, 14 (1986). The defendant has made no such showing.[2]

The defendant was indicted promptly after Clark revealed his name. There is no evidence or claim that the Commonwealth intentionally delayed the defendant's indictment. Nor is there any support for the claim that the Commonwealth was reckless in not discovering the defendant's involvement sooner.

---

[2] The defendant has made no independent argument that he was denied due process by the loss of potentially exculpatory evidence. Nor would he have been aided if he had made such an independent argument. In this case, in which the asserted denial of due process of law from preindictment delay is based on a claim of prejudice resulting from the loss of allegedly exculpatory evidence, we have treated the level of prejudice that must be shown as the same as that which would have to be shown in support of a due process claim based on the loss of exculpatory evidence.

2. The defendant's double jeopardy claim fails for want of factual support. The argument is grounded on a claim that the prosecutor intentionally presented improper information in his opening jury argument for the purpose of forcing the defendant to move for a mistrial (as he did). The defendant reasons that the prosecutor was uncertain whether Clark (who had been wavering) would testify against the defendant and that the prosecutor sought more time to bolster his case by goading the defendant into moving for a mistrial.

The prosecutor's opening made reference to an incriminatory statement the defendant had made at the time of his arrest. The defendant argued that that statement had not been seasonably disclosed as it should have been. The prosecutor could not show that disclosure had been made in writing but thought it had been made orally. The defendant's other objections to the opening were not substantial and, as a careful examination of the transcript shows, the prosecutor's representations concerning anticipated evidence in these respects were substantially borne out. The judge stated that he did not think a mistrial was needed, but agreed to declare one specifically because the defendant was asking for one. After doing so, he promptly empanelled a new jury before whom Clark testified.

As a general rule, double jeopardy is not a bar to retrial of a defendant who has been granted a mistrial on his own motion. *Oregon* v. *Kennedy,* 456 U.S. 667, 672 (1982). *Commonwealth* v. *Lam Hue To,* 391 Mass. 301, 310-311 (1984). The defendant, however, seeks to bring his case within the exception to this rule, articulated by the Supreme Court in *Oregon* v. *Kennedy, supra* at 676, and recognized by this court in *Lam Hue To, supra* at 311, that applies when the mistrial is granted in response to governmental misconduct that was intended to goad the defendant into moving for a mistrial. See *Commonwealth* v. *Murchison,* 392 Mass. 273, 276 (1984).

The judge's findings dispose of this argument. He found that "the prosecutor's conduct was not deliberate, was not in any way intended to harass or to cause a mistrial." It was "unfortunate" but not "deliberately done, quite the contrary." These findings were fully warranted on the record.

3. The judge did not err in not dismissing earlier than he did a juror who promptly came forward in the course of trial to say that he was acquainted with a prosecution witness.

On the fourth day of trial, a juror advised the judge that he knew one of the witnesses who had testified that day, a former security officer at the Chelsea Naval Hospital. The witness had been on duty in the early morning of December 20, 1972, when a man who was said to have been shot passed through the security gate in a motor vehicle. He observed the two men who had accompanied the wounded man to the hospital and overheard one of them say during a telephone call that "Louie's been shot. I think we're in big trouble."[3]

The juror, who was a United States postal policeman, told the judge that he had occasionally met and talked with the witness, who had been a security police officer at the South Boston postal annex. The juror said his ability to weigh the witness's testimony and all the evidence would not be affected by his acquaintance with the witness. Defense counsel moved that the juror be discharged. The judge stated that he was impressed with the juror's demeanor and his disclosure of the information. He denied the motion. Surely, at this point, the judge was acting properly and well within his discretion. See *Smith* v. *Phillips,* 455 U.S. 209, 215-217 (1982); *Commonwealth* v. *Coleman,* 389 Mass. 667, 676 n.7 (1983).

At the close of the evidence, the judge himself raised the question of the juror's participation in jury deliberations. After some discussion, and on the defendant's motion with his personal approval, the judge excused the juror and substituted an alternate juror. The judge had the authority, at least on the defendant's motion, to excuse the juror. See G. L. c. 234A, § 39 (1986 ed.) ("[t]he court shall have the discretionary authority to dismiss a juror at any time in the best interests of justice"). Cf. *Commonwealth* v. *Coleman, supra* at 675-676 (no error in declining to hold a voir dire after impartial juror was dismissed on defendant's motion).

---

[3] There was evidence that the defendant used the alias "Louis Brown."

There is not the slightest hint of any impropriety on the part of the juror or error on the part of the judge. The defendant did not request an examination of other jurors following the discharge of the juror or a jury instruction concerning the juror's discharge. Neither would have been required if a request had been made. In our view, the defendant is now trying to fault the judge for an effort to be fair to him.

4. The defendant presents various arguments that certain errors denied him due process of law or entitle him to relief under G. L. c. 278, § 33E. None has merit. (a) The defendant's objections to the judge's charge, which were not preserved for appellate review in the normal course, are not well founded in any event. The judge covered the substance of the defendant's requested instructions to the extent necessary. (b) The exclusion of a hospital record of the defendant's admission to Boston City Hospital in October, 1971, for chest pains was proper. That record had no probative merit on any substantive issue at trial, nor did the record corroborate in any significant way the testimony of a prosecution witness (on a collateral matter) on which the defendant relied. Admission of the hospital record could not conceivably have had any effect on the jury verdict in this case, and its exclusion has nothing to do with the defendant's constitutional right of confrontation. (c) The claim that the defendant was denied effective assistance of counsel is not supported on this record. An ineffective assistance of counsel claim founded on an asserted failure of counsel to call certain witnesses and to allow the defendant to testify can rarely be subjected to a full and meaningful analysis on the trial record alone. In this case, in any event, the possibility that any omission of counsel made a difference in the result seems insubstantial.

We see no basis for granting the defendant relief under G. L. c. 278, § 33E.

*Judgment affirmed.*