## COMMONWEALTH vs. ROBERT SILVA.

Suffolk. September 14, 1987. — December 17, 1987.

Present: WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Evidence,* Relevancy and materiality, Admissions and confessions, Other offense, Tape recording, Cross-examination, Record of past knowledge. *Perjury. Practice, Criminal,* Grand jury proceedings, Judicial discretion, Argument by prosecutor.

At a perjury trial, testimony of an eyewitness that was evidence of the defendant's participation in another crime was properly admitted as tending to prove a motive for the defendant to commit perjury. [322-323]

This court modified prospectively the "quantitative rule" applicable to perjury prosecutions that had required a conviction of perjury to be based on the direct testimony of either two witnesses, or one witness plus independent evidence of strong corroborating circumstances; hereafter the Commonwealth may secure a conviction with "highly reliable" evidence, other than direct testimony, of "direct or clear and compelling character" and "objectively inconsistent with the innocence of the defendant," together with independent corroborating evidence. [323-324]

On appeal from a conviction of perjury, there was no merit to the defendant's contention that the Commonwealth had failed to prove the defendant's sworn testimony was material to the grand jury's deliberations. [324-325]

At a perjury trial, where the Commonwealth introduced ample evidence to corroborate direct testimony, the defendant's motion for a required finding of not guilty on the issue of quantitative corroboration of perjury was properly denied. [325]

At a criminal trial, the judge properly admitted as evidence an extremely poor quality tape recording of sounds recorded by a security system during a larceny in a store, where the recording, whose authenticity was not questioned, was offered for the limited purpose of demonstrating that the larceny occurred at a particular time. [325-327]

At a criminal trial, no error appeared in the circumstances, in the judge's allowing the prosecutor to cross-examine the defendant about the defendant's failure to subpoena certain police department records for trial. [327-328]

At the trial of a criminal case, the judge properly allowed a prosecution witness to use a copy of his grand jury testimony to refresh his memory of the exact words the defendant had spoken to him. [328]

No substantial risk of a miscarriage of justice was created by the prosecutor's use of the words "I submit" and "I suggest" as a rhetorical device in closing argument. [328-329]

No substantial risk of a miscarriage of justice was created by the judge's instruction on the element of materiality with respect to the crime of perjury. [329-330]

INDICTMENT found and returned in the Superior Court Department on June 28, 1985.

The case was tried before *James P. McGuire,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Robert A. George* for the defendant.

*Robert N. Tochka,* Assistant District Attorney (*Philip T. Beauchesne,* Assistant District Attorney, with him) for the Commonwealth.

ABRAMS, J. Convicted of perjury, the defendant, Robert Silva, a former Revere police officer, appeals, alleging that (1) the trial judge improperly admitted evidence of the defendant's participation in a larceny as part of the corroborative evidence for the allegation of perjury; (2) the evidence was insufficient to support a finding of guilt beyond a reasonable doubt; (3) the trial judge improperly admitted a tape recording of the alleged larceny; (4) improper cross-examination of the defendant was allowed on his failure to introduce certain evidence; (5) the only direct evidence of perjury was inadmissible hearsay; (6) the prosecutor's summation was improper; and (7) improper instructions were given on the elements of perjury. We transferred the case to this court on our own motion. We affirm the defendant's conviction.

We summarize the evidence. On February 1, 1985, at 3:08 A.M., a break-in took place at the Consumer Value Store (CVS) in Revere's Northgate Shopping Mall. The break-in tripped a silent alarm operated by Sonitrol Security Systems, Inc. Sonitrol immediately alerted the Revere police. The noise of the break-in also activated a Sonitrol recording device which recorded all sounds in the store for approximately the next twenty minutes. At 3:12 A.M., defendant and his partner, Carl Moschella, were dispatched in their cruiser to investigate. Officer

Austin Boyington and his partner, Daniel Sweeney, were sent as back-up. Seconds before the two cruisers arrived at about 3:15 A.M. with their overhead lights flashing, Carl Westphal, an employee of the Radio Shack in the shopping center, saw a black automobile drive away from the CVS store. A minute later a third cruiser arrived carrying officers Anderson and DiStasio. The defendant and at least one other officer went inside the CVS store. While they were inside, Westphal approached the scene and spoke with one of the officers. A few minutes later, Westphal left.

Another witness, Scott Cohen, stated that he drove to the Northgate Mall sometime between 3 and 3:30 A.M. to use the automatic teller machines of Baybank and the First National Bank. He stated that after completing a business transaction at Baybank he drove to the First National Bank.[1] On route he saw two or three police cruisers parked in front of the CVS store. As he came within six feet of one of the cruisers his headlights shone on an officer who turned and looked in the direction of Cohen's car. According to Cohen, the officer was leaning over the cruiser's trunk holding a large box-like object. Cohen later identified this police officer as the defendant. Two other officers, whom Cohen later identified as Boyington and Anderson, were standing alongside the cruiser. Based on his observations, Cohen did not know there was any wrongdoing at the store.

Sometime between 3:35 and 3:40 A.M., the store manager and the pharmacist arrived at the scene. They inspected the store with the police. In the entrance they found a large green plastic barrel which did not belong to the store.[2] Merchandise was missing of an estimated value of $2,421.46.[3]

---

[1] Bank officers from Baybank and the First National Bank testified that there was no record that Cohen used the machines that morning. The vice president for Baybank stated that it is possible that there could be a transaction made without a record although she had no personal experience with a transaction without a record.

[2] The barrel was not held as evidence by the Revere police officers at the scene and was not mentioned in the police report of the incident. The defendant did not contest the fact that the plastic barrel was at the scene.

[3] The missing items included 125 cigarette cartons, thirty-six bottles of cologne, seventeen Russell Stover Valentine candies, and an assortment of razor blades.

At approximately 7:30 A.M., the officers who worked the night shift, including the defendant, returned to the station house. Officer Joseph Mirasolo, a friend of the defendant,[4] was at the station. Mirasolo said that at that time the defendant approached him and said that at the CVS call Anderson and DiStasio "were acting like a bunch of scavengers, pack-rats, and that they were loading the stuff into the cruiser by using a plastic bucket." According to Mirasolo, the defendant said he wanted no part of the call and that he had not put his name on the report. Mirasolo then went and looked at the report, saw that it contained the defendant's name, and told the defendant that his (the defendant's) name was in the report.

Later that morning, the defendant again spoke with Mirasolo. This time he confided that he was confused and did not know what to do. Upset at what he had heard from the defendant, Mirasolo anonymously telephoned the State police later that same day claiming to have witnessed a larceny by police of the CVS store.[5] The following day Mirasolo also called the CVS store claiming to be a special investigator for the Revere police department and inquired about the break-in. On February 4, 1985, Mirasolo again telephoned the State police. This time he identified himself, and he repeated to Lieutenant Robert Bidder the defendant's statement about Anderson and DiStasio.

In the meantime, on the afternoon of February 1, Ron Eisenhart, a security specialist for the CVS corporation, telephoned the major crime unit of the Massachusetts State police. Eisenhart also spoke with Bidder. Eisenhart told Bidder about

---

[4]Mirasolo testified that he was "extremely close" to the defendant. At the time of the incident he thought the defendant was "a friend that [Mirasolo] could probably depend on throughout [his] working career." At trial, the defendant stated that Mirasolo was "[j]ust [a] co-worker"; he did not associate with him on a "social basis"; and he was "not close" to Mirasolo.

[5]Mirasolo claims he called at 9 A.M. Lieutenant Detective Robert Bidder, with whom Mirasolo spoke, said that the call came in at 2 P.M. It is undisputed, however, that Mirasolo called Bidder within twelve hours after the break-in occurred; Bidder testified that he recognized Mirasolo's voice as being that of the anonymous caller when he spoke with Mirasolo three days later.

the tape recording which had been activated at the CVS store when the break-in occurred.[6] Eisenhart suspected Revere police officers took part in the theft.

On May 15, 1985, during the grand jury investigation into the theft at the CVS store, the defendant denied having spoken to Mirasolo about Anderson and DiStasio at 7:30 A.M. on February 1. This denial formed the basis for the defendant's perjury conviction.

I. *Corroborative evidence.* The defendant contends that it was unduly prejudicial to permit the jurors to hear Cohen's identification of the defendant as the officer at the scene holding a large box-like object over the cruiser's trunk. The defendant asserts that the Commonwealth's evidence should have been limited to Mirasolo's testimony as to the defendant's alleged statement to Mirasolo, the defendant's denial of that statement to the grand jury, the inventory to establish the larceny, and any evidence tending to implicate Anderson and DiStasio in the larceny. We do not agree.

Cohen's testimony was relevant to establish the defendant's knowledge of the facts contained in the alleged statement to Mirasolo. In addition, if the defendant took part in the larceny and knew he had been seen, he would have a motive to accuse Anderson and DiStasio in order to exculpate himself. The evidence was relevant to prove motive and to present to the jurors as full a picture as possible of the events surrounding the making of the statements. *Commonwealth* v. *Bradshaw,* 385 Mass. 244, 270 (1982). "[E]vidence which is otherwise relevant to the crime being tried is not rendered inadmissible merely because such evidence would tend to prove the commission of other crimes." *Commonwealth* v. *Hoffer,* 375 Mass. 369, 372 (1978). However, "there is ground for excluding such evidence if the prejudice likely to be generated by it outweighs its probative value — a matter on which the opinion of the trial judge will be accepted on review except for palpable error." *Commonwealth* v. *Young,* 382 Mass. 448, 463 (1981). We think the judge was well within his discretion in admitting

---

[6]The tape recording was played to the jury and introduced as an exhibit. The admissibility of the tape is discussed below.

the evidence of the larceny which tended to prove a motive for the defendant to commit perjury. See, e.g., *People* v. *Mazza,* 182 Colo. 166 (1973); *Hogan* v. *State,* 530 P.2d 1026, 1034 (Okla. Crim. 1975); *State* v. *Piersall,* 25 Or. App. 791 (1976); *Yarbrough* v. *State,* 617 S.W.2d 221 (Tex. Crim. App. 1981). See also *State* v. *LaBarre,* 561 P.2d 764 (Ariz. App. 1977). There is no "palpable error" in the admission of Cohen's observations.

Since the early 1800's we have said that "one may not be convicted of perjury except on the directly opposing testimony of either two witnesses or one witness and, in addition, 'independent evidence [of] strong corroborating circumstances. . . .'" *Commonwealth* v. *Parker,* 2 Cush. 212, 223-224 (1848). This so-called "quantitative rule" has been criticized strongly in recent years as inflexible and mechanical. *Commonwealth* v. *Hawley,* 380 Mass. 70, 81-82 (1980). *Commonwealth* v. *Coleman,* 20 Mass. App. Ct. 541, 553-557 (1985), *S.C.* 397 Mass. 1001 (1986). Although we apply the customary quantitative rule in the present case and conclude that the Commonwealth met its burden under that standard, we today modify the quantitative rule, in accordance with the Appeals Court's well-constructed analysis in *Coleman,* to apply to cases tried after the date of this opinion.

Hereafter, the Commonwealth may secure a conviction of perjury where it is able to offer evidence of perjury and corroboration of that evidence sufficient to establish the defendant's guilt beyond a reasonable doubt. See *Commonwealth* v. *Coleman,* 20 Mass. App. Ct. at 556-557, and sources cited. In modifying the quantitative rule to eliminate the requirement that the Commonwealth introduce direct testimony in every perjury prosecution, we follow a number of other States which recently have determined that convictions for perjury may be based on evidence other than direct testimony. E.g., *State* v. *Sanchez,* 204 Conn. 472 (1987), and cases cited therein; *People* v. *Rosner,* 67 N.Y.2d 290 (1986); *McGuire* v. *State,* 707 S.W.2d 223 (Tex. App. 1986). Where other kinds of evidence are "substituted for the testimony of a live witness, however, that evidence must be of a highly reliable order and the necessity

for corroboration is not eliminated." *State* v. *Sanchez, supra* at 480. We adopt the statement of the Appeals Court that such evidence "must be of a direct or clear and compelling character," *Commonwealth* v. *Coleman,* 20 Mass. App. Ct. at 558, "objectively inconsistent with the innocence of the defendant." *Id.* at 557 & n.21. See *Brightman* v. *United States,* 386 F.2d 695, 697 (1st Cir. 1967) (corroborating evidence must "*tend*[ ] to establish the defendant's guilt" and "*together with* the direct evidence" must be "inconsistent with the innocence of the defendant" [emphasis in original]). Moreover, just as in cases involving the direct testimony of a single witness, "the corroboration requirement will be satisfied only with evidence that is independent of the principal evidence which it corroborates." *State* v. *Sanchez, supra* at 480-481.

II. *Denial of the defendant's motion for a required finding of not guilty.* The defendant argues that the judge erred in denying his motion for a required finding of not guilty. He argues that the Commonwealth failed to introduce sufficient evidence of materiality of his statement to the grand jury and failed to corroborate adequately Mirasolo's testimony. We conclude there is no merit in these claims of error.

The defendant first argues that because the grand jury in fact issued indictments, his testimony cannot be said to have been material to the grand jury's determinations. This argument was rejected in *Commonwealth* v. *Borans,* 379 Mass. 117, 136 (1979), in which we said: " 'The government need not show that because of the perjured testimony, the grand jury threw in the towel. Actual impediment of the investigation is not required. . . . Grand jurors are capable of judging credibility and they are free to disbelieve a witness and persevere in an investigation without immunizing a perjurer.' *United States* v. *Abrams,* 568 F.2d 411, 421 (5th Cir.), cert. denied, 437 U.S. 903 (1978)." The proper "test of relevancy and materiality is not whether the false testimony did in fact influence a pertinent determination. Instead, it must be decided whether, viewed objectively, the testimony directly or circumstantially had a reasonable and natural tendency to do so." *Commonwealth* v.

*Giles,* 350 Mass. 102, 111 (1966). See *Commonwealth* v. *McDuffee,* 379 Mass. 353, 360 (1979).

The focus of the grand jury's investigation was whether certain Revere police officers committed a larceny. The defendant's denial of his statement to Mirasolo that a larceny in fact had been committed by certain named police officers went to the heart of the investigation. A rational trier of fact could have found that the defendant's denial was "material" to the grand jury's investigation of larceny by certain Revere police officers. Thus, the trial judge did not err in denying the defendant's motion for a required finding on the issue of materiality.

The judge also correctly denied the defendant's motion for a required finding of not guilty on the issue of quantitative corroboration of perjury. The Commonwealth introduced ample strong corroborating evidence. See *Commonwealth* v. *Parker,* 2 Cush. 212, 223-224 (1848). The Commonwealth introduced evidence that a larceny by Revere police officers took place at the CVS store, that the defendant had knowledge of the larceny, and that one of the officers who reported to the store told Mirasolo about the larceny within hours after it occurred.[7] The Commonwealth's evidence also indicated that the defendant knew he could be identified by a civilian witness. The defendant therefore had a reason to exculpate himself by telling Mirasolo that others committed the larceny. All this evidence corroborated Mirasolo's testimony that the defendant made the statement. The evidence was sufficient "clearly to turn the scale." *Id.* Thus, the Commonwealth met its burden under the quantitative rule.

III. *Admission of the tape.* The defendant objected at trial to admission of the tape recording of the alleged larceny on the

[7]Mirasolo reported the incident to the State police within twelve hours after it occurred. Mirasolo also told the State police early on about the plastic barrel and how it was used — details Mirasolo only could have learned from someone present during the larceny, because the barrel was not mentioned in the incident report and was not preserved as evidence by the officers. See note 2, *supra.* Neither Westphal nor Cohen, the only civilian witnesses present while the police were at the store, was able to state that he saw any wrongdoing.

ground that it was "unintelligible." It is within the sound dis-
cretion of the trial judge whether to admit relevant tape record-
ings in evidence. *Commonwealth* v. *Watson,* 377 Mass. 814,
834-836 (1979). If a tape recording contains inaudible portions,
the judge's task is to decide whether the inaudible portions are
so substantial as to make the rest more misleading than helpful
for the jury. *Commonwealth* v. *Allen,* 22 Mass. App. Ct. 413,
421-422 (1986). See *Gorin* v. *United States,* 313 F.2d 641,
652 (1st Cir. 1963). The measure of the judge's discretion is
to assess whether the inaudible portions are "so substantial, *in
view of the purpose for which the tapes are offered,* as to
render the recording as a whole untrustworthy" (emphasis
added). *Commonwealth* v. *Allen, supra* at 422, citing *United
States* v. *Bell,* 651 F.2d 1255, 1259 (8th Cir. 1981), quoting
*United States* v. *Young,* 488 F.2d 1211, 1214 (8th Cir. 1973).
We conclude that the judge did not abuse his discretion in
admitting the tape in evidence.

The quality of the tape is extremely poor. Certain sounds
are, however, distinguishable. For example, one set of voices
can be heard in the first minute or two, and a different set of
voices can be heard about five minutes later.[8] In addition, an
intermittent crashing or rumbling noise can be heard before
the initial set of voices, as well as after the second set of voices.

The Commonwealth offered the tape for the proposition that,
given the other evidence, the jurors were entitled to infer that
the crashing or rumbling sound at the beginning of the tape
was the noise of the original perpetrators removing merchandise
from the store by means of dumping it into a plastic barrel,
and that the intermittent resumption of a similar sound after
the second set of voices was the noise of police officers remov-
ing more merchandise by the same method.[9] The issue whether

---

[8] The defendant admitted that the first set of voices in all probability
belongs to the original perpetrators of the break-in. The defendant also
admitted that the police were on the scene at the time the second set of
voices was recorded.

[9] Testimony was given that the tape began running at 3:09 A.M. when the
store's alarm system was triggered. The defendant does not challenge this
fact and does not challenge the authenticity of the tape. The total amount

a larceny took place while the police were at the store was central to the Commonwealth's case. There is no dispute that the tape was recording while the Revere police officers were at the store. We cannot conclude that the tape could be of no "practical value in the jury's resolution of relevant issues." *Commonwealth* v. *Allen, supra* at 422, and cases cited. Thus, in view of the limited purpose for which the Commonwealth offered the tape, the trial judge did not abuse his discretion in admitting the tape in evidence.

IV. *Cross-examination.* The defendant claims that it was error for the judge to allow the prosecutor to cross-examine the defendant regarding the defendant's failure to subpoena Revere police department files allegedly related to Cohen. The defendant simply states his claim on appeal in cursory and conclusionary fashion. He cites no legal authority to support his claim. This is an insufficient appellate argument and is not properly before us. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975). See *McCone* v. *New England Tel. & Tel. Co.*, 393 Mass. 231, 236 (1984); *Commonwealth* v. *Elder,* 389 Mass. 743, 747 n.9 (1983).

Even assuming the argument properly were before us, there is no error. "The scope of cross-examination rests largely in the discretion of the judge." *Commonwealth* v. *Hoffer,* 375 Mass. 369, 374 (1978). Defense counsel stated in his opening argument that a witness named Cuoco would testify that the witness Cohen told him (Cuoco) that he (Cohen) "had a bad incident" with the defendant and that he (Cohen) "wanted to get him [the defendant]." In addition, the defendant stated that he recognized Cohen from "contact in an official capacity . . . in the performance of [the defendant's] duties." In response to this statement, the prosecutor asked the defendant if he could substantiate the alleged encounter with Cohen. The defendant could not remember any incident. The defendant also stated that he did not search the police department official files for such an incident because he did not "have access to that

of time on the tape is less than twenty minutes. Thus, all of the sounds heard occurred before the CVS employees arrived at 3:35 A.M.

information." Over objection of defense counsel, the prosecutor then asked the defendant whether he was aware that, by using a subpoena, it was possible to obtain the police records. The defendant admitted he was aware of the subpoena procedure.[10] There was no error. See *Commonwealth* v. *Ramey,* 368 Mass. 109, 111-113 (1975).

V. *Present recollection refreshed.* The defendant argues that the trial judge improperly allowed Mirasolo no independent recollection of the defendant's exact words to him, and instead allowed Mirasolo to read his own grand jury testimony to the jury. There was no error. During direct examination, Mirasolo professed a lack of recollection of the exact words the defendant had spoken to him on the morning of the break-in. The prosecutor then showed Mirasolo a copy of his grand jury testimony to refresh his memory. After reading the copy to himself, Mirasolo answered questions about the exact words the defendant used.[11] "A witness may use a writing to refresh a failing memory. . . . The transcript . . . furnishes no basis for concluding that when [Mirasolo] did answer the prosecutor's questions, [he] was not testifying from present memory." (Citations omitted.) *Commonwealth* v. *Hoffer, supra* at 376.

VI. *The prosecutor's summation.* The defendant did not press an objection to the argument. In the absence of an objection to final argument, the defendant is not entitled as of right to appellate review of the alleged improper remarks. *Commonwealth* v. *Bourgeois,* 391 Mass. 869, 884 (1984). *Commonwealth* v. *Fitzgerald,* 376 Mass. 402, 416 (1978). See *Commonwealth* v. *Kozec,* 399 Mass. 514, 518 n.8 (1987). "However, we may review such alleged errors to determine if there was a substantial

---

[10]The defendant argues in his brief that the Commonwealth violated its discovery obligations by not turning over the relevant police records to the defendant. However, there is no indication in the appellate record that the Commonwealth had records concerning any such incident, or that police records even existed as to an incident between Cohen and the defendant. The record on appeal therefore does not substantiate the defendant's claim that the Commonwealth had exculpatory records which it did not give him.

[11]There was no objection to this procedure.

risk of a miscarriage of justice." *Commonwealth* v. *Bourgeois, supra. Commonwealth* v. *Fitzgerald, supra.*

The defendant asserts that the prosecutor's use of the words "I submit" and "I suggest" in commenting on the tape was "tantamount to testimonial interpretation." We do not agree. The prosecutor in this case permissibly used the words as a rhetorical device to urge the jury to draw inferences from the evidence favorable to his case. See, e.g., *Commonwealth* v. *Drayton,* 386 Mass. 39, 52 (1982); *Commonwealth* v. *Stone,* 366 Mass. 506, 516 n.4 (1974). See also *Commonwealth* v. *Ianelli,* 17 Mass. App. Ct. 1011, 1013 (1984). Generally, the references to the tape were followed by the prosecutor's reminding the jurors that "it's for you to say" what the sounds on the tape represent. Moreover, he expressly stated: "Take everything that the twelve of you remember about the tape, chew it up, digest it, and come to some reasonable conclusions. You may or may not agree with me, but if you go at it in that method, you can get through this case in a logical, reasonable, dispassionate method." There is no substantial risk of a miscarriage of justice.[12]

VII. *Jury instructions.* The judge instructed the jury, "The Commonwealth must prove facts from which it can be determined that any allegedly false answer was directly or circumstantially relevant and material to the inquiry [of the grand jury]." The defendant did not object to this instruction. In the absence of an objection below, we review the charge as a whole to determine if there is a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 (1967). "Moreover, in determining whether the in-

---

[12]The defendant asserts in one sentence in his brief that the prosecutor's comments during summation regarding the defendant's failure to corroborate the grudge Cohen allegedly held against the defendant are grounds for reversal. The defendant's cursory argument made without citation of authority is an insufficient appellate argument. See *supra* at 327. We therefore treat it as waived. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975). See *Commonwealth* v. *Cundriff,* 382 Mass. 137, 151 n.22 (1980), cert. denied, 451 U.S. 973 (1981). We note, however, that the prosecutor's comments, to which the defendant did not object below, were warranted on the record.

structions create a substantial risk of a miscarriage of justice, we view the absence of any objections to the instructions as relevant." *Commonwealth* v. *Ely,* 388 Mass. 69, 73-74 (1983). *Commonwealth* v. *Tavares,* 385 Mass. 140, 148, cert. denied, 457 U.S. 1137 (1982).

The instruction the judge gave in this case did not create a substantial risk of a miscarriage of justice. "The word 'material' and the idea of materiality are commonly understood, and every day judgments on a variety of subjects are made upon a layman's sense of materiality." *Commonwealth* v. *McDuffee,* 379 Mass. 353, 365 (1979), quoting *People* v. *Clemente,* 285 A.D. 258, 262 (1954), aff'd, 309 N.Y. 890 (1955). "Without expressing any opinion as to the exact jury instructions which are required," we note, however, that the better practice is to instruct the jury that a statement is "material" in respect of perjury if it has "a reasonable and natural tendency to influence the pertinent determination." *Commonwealth* v. *McDuffee, supra* at 366.

*Judgment affirmed.*