COMMONWEALTH *vs.* DANIEL J. McCOLGAN. No. 90-P-1263. October 11, 1991. *Practice, Criminal*, Delay in commencement of prosecution, Question by jury. *Due Process of Law*, Delay in commencement of prosecution. *Rape. Identification. Constitutional Law*, Assistance of counsel.

In the early morning of September 16, 1979, the victim was awakened in her Brookline apartment by an intruder who had entered through a window. The intruder proceeded to commit various bizarre acts of a sexual nature on the victim. In June of 1990, the defendant was tried before a jury on charges of rape and burglary arising out of the 1979 incident, and he was convicted and sentenced to a lengthy term at M.C.I., Cedar Junction. He challenges his convictions on numerous grounds, but the only one that merits extended discussion is his claim that the indictments should have been dismissed because of the unusually long delay in bringing him to trial. We affirm the convictions.

The defendant filed a motion to dismiss, "pursuant to Mass.R.Crim.P. 36(c)," soon after the indictments were handed up in June of 1989. The motion was accompanied by the defendant's affidavit, and the motion judge made findings of fact after holding an evidentiary hearing.[1] The judge found that, after conducting an investigation of the rape, Brookline police officers focused their attention on the defendant as the individual who drove the victim home in a taxi the night before the rape[2] and who returned to break into the apartment and attack her. On September 24, 1979, two Brookline police officers visited the defendant at the rooming house where he lived. He was given his Miranda warnings, questioned, and informed of the rape allegations. He told the police that he did not remember giving the victim a ride in his taxi, and he denied raping her, claiming that he was homosexual and not attracted to women. The next day, the police obtained a warrant for the defendant's arrest, but when they returned to the rooming house they found the defendant's room empty and all his possessions gone. The defendant had been driving a taxi owned by the Ferrante Cab Company for some time. September 24, 1979, was the last night he drove it, however, and he never returned to the cab company or paid the taxi rental fee for that night.

---

[1] We have not been supplied with a transcript of that hearing. The defendant does not contend, however, that the subsidiary findings are lacking in evidentiary support. Therefore, we accept those findings.

[2] The rape occurred early on a Sunday morning; the taxi ride was late the preceding Friday night.

Brookline police officers took a number of steps to locate the defendant. They returned several times to the rooming house and spoke to the owner. They visited members of the defendant's family in Quincy who told the police that they had no contact with the defendant and no knowledge of his whereabouts. They sent a teletype to other police departments using several names the defendant had used. They received a response from the Federal Bureau of Investigation to the effect that the defendant had used numerous other aliases and had resided in numerous States. The matter lay dormant for a number of years. In 1988, a new warrant for the defendant's arrest was entered in the National Crime Information Center (NCIC) computer. During that same year, the police also looked for the defendant at his father's funeral in Quincy. The defendant was finally located in February of 1989 in California and promptly extradited to Massachusetts.

The motion judge found that "[t]here was little or no chance that any other method of police investigation would have resulted in [the defendant's] speedy apprehension." Applying the standard of Mass.R.Crim.P. 36(c)(1), 378 Mass. 912 (1978), he concluded that the conduct of neither the prosecuting attorney nor the Brookline police was "unreasonably lacking in diligence." Further, the judge found no merit to the defendant's claim that the delay was prejudicial because it caused his memory of the relevant time frame to have dimmed and prevented him from establishing an alibi defense. Any prejudice the defendant might suffer, the judge concluded, would be "due to his own decision to run and hide."[3]

The defendant's motion raised the issue of prearrest and preindictment delay. Therefore, it was not properly brought under Mass.R.Crim.P. 36(c). See Smith, Criminal Practice and Procedure § 2327 (2d ed. 1983). Instead, absent a statute of limitations bar, we undertake a due process analysis in such cases, having in mind the need to protect "the defendant's ability to mount a defense." *Commonwealth* v. *Imbruglia*, 377 Mass. 682, 691 (1979). See *United States* v. *Lovasco*, 431 U.S. 783, 790 (1977); *Commonwealth* v. *Geoghegan*, 12 Mass. App. Ct. 575, 577 (1981). Before the drastic remedy of dismissal is afforded a defendant, he must sustain the burden of showing that the government intentionally or recklessly caused the delay and that he suffered substantial actual prejudice as a result. See *Commonwealth* v. *Imbruglia*, 377 Mass. at 691; *Commonwealth* v. *Best*, 381 Mass. 472, 484 (1980); *Commonwealth* v. *Patten*, 401 Mass. 20, 21-22 (1987); *Commonwealth* v. *Fayerweather*, 406 Mass. 78, 86-87 (1989).

The defendant claims that the Brookline police were negligent during the nearly nine and a half year period between the commission of the crimes and the defendant's apprehension. He points to the misspelling of his name on the arrest warrant, the failure to enter the arrest warrant in

---

[3]The motion to dismiss was renewed and denied again at trial.

the NCIC computer before 1988, and the long period of inactivity. Even were we to assume some shortcomings on the part of the police, however, the defendant failed to sustain his burden. First, the judge found no causal relationship between any failures on the part of the police and their inability to locate the defendant. On the contrary, he made the significant finding that it was the defendant's own action in fleeing the Commonwealth that precipitated the delay. Compare *United States* v. *Cartano*, 420 F.2d 362, 364 (1st Cir.), cert. denied, 397 U.S. 1054 (1970); *United States* v. *Greene*, 737 F.2d 572, 576 (6th Cir. 1984). Second, there was no suggestion at all of intentional or reckless conduct on the part of the police, and it is not enough for the defendant to show mere negligence. See *Commonwealth* v. *Imbruglia*, 377 Mass. at 691.

Finally, the defendant's vague and unsupported claim of prejudice falls far short of what would be required, in the circumstances, for dismissal. He asserts in his affidavit that he was unaware before his apprehension in California that the investigation had focused on him, and his own memory of the crucial time frame over the intervening years had dimmed. We do not minimize the difficulty of facing trial on charges arising out of an incident that occurred more than ten years earlier. The defendant ignores the fact, however, that the Brookline police made him aware of the allegations before he fled. He asserts that his brother's testimony, if given soon after the offense, would have been helpful. The defendant has provided no specifics as to where he was or with whom at the critical time, however, and one would have to engage in pure speculation to conclude that his brother's testimony would have supported an alibi defense. The defendant also claims prejudice as a result of his father's death after the incident and before trial, but he fails to indicate how his father's testimony would have helped him. Finally, the defendant asserts that the delay prevented him from locating the manager of the rooming house in which he was living in 1979. The defendant suggests that the manager's testimony would have shown that he was asked to leave on September 24, 1979, and that he did not move to avoid prosecution. However, the judge heard evidence, which he credited, that the manager's testimony would have contradicted this assertion.

As there was no showing that any testimony available soon after the incident, but unavailable at the time of trial, would have been favorable to the defense, actual prejudice was not established, and the motion to dismiss was properly denied. See *Commonwealth* v. *Imbruglia*, 377 Mass. at 690; *Commonwealth* v. *Best*, 381 Mass. at 485-486; *Commonwealth* v. *Patten*, 401 Mass. at 22; *Commonwealth* v. *Fayerweather*, 406 Mass. at 87.

We touch briefly on the other issues raised in the appeal.

1. The trial judge did not abuse his discretion in allowing the jury, at their request during deliberations but over the defendant's objection, to listen to tapes of the testimony of the victim and a police fresh complaint

witness. The tapes included direct and cross-examination of both witnesses, and none of the other witnesses who testified at the trial gave contrary versions of the events. Cautionary instructions, although often given, see *Commonwealth* v. *Mandeville*, 386 Mass. 393, 406 (1982), and *Commonwealth* v. *Phong Thu Ly*, 19 Mass. App. Ct. 901, 902 (1984), were not requested and, in the circumstances, were not required.

2. The evidence linking the defendant to the crimes, although principally circumstantial, was compelling and more than adequate to overcome the defendant's motions for required findings of not guilty. It consisted of more than evidence of consciousness of guilt. The victim's identification of the defendant was weak because the assailant had kept a pillow over her head, allowing her only an occasional glimpse of his face. There was evidence (the defendant's own admission), however, that he drove the victim home in a taxi two nights before the rape, that he made remarks to others (about his earlier career on Wall Street and difficulties he encountered there, and about the tiny room he occupied) similar to remarks made to the victim during the attack, and that he had a distinctive theatrical manner of speech similar to that of the assailant. See *Commonwealth* v. *Cavanaugh*, 7 Mass. App. Ct. 33, 36 (1979).

3. The judge instructed the jury without error on identification. Although the victim failed to make an in-court identification, and her out-of-court identifications lacked certainty, the judge's reference to the victim as an identifying witness was not inaccurate. The defendant could not have been hurt by the judge's proper, if unsolicited, reference to the possibility that the victim might have made an honest mistake.

4. The victim's incorrect identification of an individual at the probable cause hearing did not bring the case within *Commonwealth* v. *Lane*, 27 Mass. App. Ct. 527 (1989). In *Lane*, there was no evidence, apart from the victim's identification testimony, linking the accused to the crime. In the present case, there was ample evidence, apart from the victim's inconclusive eyewitness identification, connecting the defendant to the crimes.

5. With regard to the defendant's claim of ineffective assistance of counsel at the probable cause hearing, in light of the compelling circumstantial evidence of guilt presented at that hearing, any motion to dismiss the charges based upon the victim's identification of a person other than the defendant would have been futile. Moreover, the prosecutor would have been free to seek indictments even if the charges had been dismissed after the probable cause hearing. After the victim identified the wrong person, defense counsel, in an effort to "lock in" her testimony, asked the victim if she was certain of that identification. Pointing to the defendant, she responded that it might have been another person seated in the courtroom. The response was unanticipated. The tactic of trying to "lock in" the victim's favorable testimony proved unfortunate for the defendant and, with hindsight, was unwise, but it did not make defense counsel's conduct fall

"measurably below that which might be expected from an ordinary fallible lawyer." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).

6. With regard to the claim of ineffective assistance of trial counsel, there is no basis in the record for an assumption that either a motion to suppress statements made to police officers in California or a motion to suppress the identification made by the victim at the probable cause hearing would have been successful.

7. Finally, even if, for some reason, it was error to allow the victim to be asked at trial whether she then recognized the individual depicted in a photograph first shown to her in 1979, given her earlier denial that she recognized the individual, the error was inconsequential. The jury knew that the victim could not identify the defendant in court and that her out-of-court attempts to identify the defendant were inconclusive; the verdict appears to have been based upon the overwhelming circumstantial evidence of the defendant's guilt. The judge's brief questioning of the victim on her ability to identify the individual in the photograph was not unfair and hardly made the judge an advocate for the Commonwealth.

*Judgment affirmed.*

*Timothy M. Farris* for the defendant.

*Robert C. Cosgrove,* Assistant District Attorney, for the Commonwealth.