COMMONWEALTH *vs.* MARK KNOWLTON.

No. 98-P-1633.

Middlesex. December 15, 1999. - October 20, 2000.

Present: BECK, DREBEN, & RAPOZA, JJ.

*Practice, Criminal,* Severance. *Perjury. Subornation of Perjury.*

Criminal indictments were properly joined for trial where the offenses arose
    out of a course of criminal conduct, were connected together, and
    constituted parts of a single scheme or plan; further, no prejudice resulted
    from the joinder where the evidence in support of each indictment would
    have been admissible at the trial of each indictment had the charges been
    severed. [268]
The corroborating evidence at the trial of an indictment alleging three counts
    of perjury was sufficient, that is, "of a direct or clear and compelling
    character," to support convictions on all counts. [268-270]

INDICTMENTS found and returned in the Superior Court Depart-
ment on April 16, 1996.

The cases were heard by *Judith A. Cowin,* J.

*Charles M. MacLean* for the defendant.

*Lincoln S. Jalelian,* Assistant District Attorney, for the
Commonwealth.

BECK, J. After a jury-waived trial in Middlesex Superior
Court, the defendant, a former police officer in the town of Gro-
ton, was convicted of three counts of perjury and one count of
subornation of perjury. An indictment for conspiracy to suborn
perjury was filed without a change of plea. He was sentenced to
four months of house arrest and two years probation.

The underlying dispute began in Groton in April, 1995, when
a "very large" dog owned by Edward D. Canto, Jr., a close
friend and fellow police officer of the defendant, bit a puppy
belonging to Canto's neighbors Maryann and Thomas Rooney.
There followed "repeated incidents" in which Canto's dog
"came after" Maryann Rooney or her dogs. Without belaboring

the details of the dog dispute, by August, 1995, the Rooneys had applied to the board of selectmen of Groton for relief from Canto's unleashed dog. At about the same time, the Rooneys began to receive undue attention from the Groton police. The Commonwealth's evidence showed that Canto had offered at least three of his fellow officers (Richard Priest, Jr., Sharon Higgins, and Richard Bird) that he would work a shift for them if they would watch, stop, cite, intimidate, or harass the Rooneys. In fact, Groton police cruisers stopped in view of the Rooneys' house several times a week for periods up to one-half hour, and followed Maryann Rooney as she drove to work or walked her dog. Once an officer got out of his cruiser, followed her into her hairdresser's salon, sat down in the next chair, and requested a haircut. The Rooneys also received an anonymous, threatening letter which used obscene language, and they were subject to verbal threats from various officers. A complaint to the police chief about these incidents led to an internal investigation during which most officers did not disclose what they knew about the campaign against the Rooneys. A grand jury investigation followed. Higgins, Priest, and the defendant all testified before the grand jury in November, 1995.

The perjury charges at issue here, three counts of a single indictment, concern the defendant's false testimony in his second appearance before the grand jury in April, 1996, after Higgins and Priest had changed their testimony and disclosed Canto's offers and their own conduct. Specifically, the indictment charged that the defendant committed perjury when he testified under oath (1) that he did not ask or encourage anyone to testify falsely before the grand jury, (2) that Canto did not ask the defendant to "watch out for a motor vehicle operated by Mary Ann [*sic*] Rooney or Tom Rooney while performing his duties as a police officer," and (3) that Higgins did not tell him she had followed Maryann Rooney while performing her official duties. The subornation count of the same indictment concerned the defendant's conduct in encouraging Priest to lie before the grand jury.

On appeal, the defendant claims that the judge erred in denying his motion to sever the indictments; that the Commonwealth failed to carry its burden of providing compelling evidence of perjury; and that the judge erred in denying the defendant's motions for required finding. We affirm, discussing each of the defendant's arguments in turn.

1. *Denial of motion to sever.* "A decision on 'whether joinder is appropriate is committed to the sound discretion of the trial judge.' " *Commonwealth* v. *Delaney,* 425 Mass. 587, 593 (1997), cert. denied, 522 U.S. 1058 (1998), quoting from *Commonwealth* v. *Montanez,* 410 Mass. 290, 303 (1991). There was no abuse of discretion here. The offenses at issue arose out of a course of criminal conduct, are connected together, and constitute parts of a single scheme or plan. Mass.R.Crim.P. 9(a)(1), 378 Mass. 859 (1979). Nor was the defendant prejudiced by the joinder. The four counts on which the defendant was convicted involved the same investigation and the same cover-up of police activity against the Rooneys and would have been admissible at each of the trials even if the charges had been severed. See *Commonwealth* v. *Cruz,* 424 Mass. 207, 210 (1997).

2. *Proof of perjury.* The defendant claims that the Commonwealth failed to meet its special burden of introducing corroborating evidence "of a direct or clear and compelling character" to support his perjury convictions. *Commonwealth* v. *Silva,* 401 Mass. 318, 324 (1987), quoting from *Commonwealth* v. *Coleman,* 20 Mass. App. Ct. 541, 558 (1985). We disagree. We begin with the direct testimony supporting each of the indictments. Priest testified that the defendant advised him not to say anything before the grand jury in order to protect Canto. Priest also testified that he heard the defendant say Canto had made him the same offer to work a shift in exchange for annoying the Rooneys as had been made to others. Higgins testified that she told the defendant she had followed the Rooneys' car.

The evidence corroborating the direct evidence was compelling. Priest's testimony that the defendant encouraged him to stick to the false information they had already given in the internal investigation was supported by the defendant's activities the day before the November, 1995, grand jury testimony. The defendant testified that, upon receiving the grand jury subpoena, he made arrangements to meet with the union's general counsel. He and Canto drove to Worcester together for that meeting. As they drove back from the meeting to the defendant's car dealership, they used the defendant's cellular phone to call Priest and Higgins. Higgins testified that she spoke to both Canto and the defendant from their car phone as they drove to Worcester. She testified that the defendant said "[i]t doesn't look good for [Canto]" and then put Canto on the

phone. Canto said, clearly in the defendant's hearing since they were in the car together, "you gotta . . . help me, you gotta tell them that I didn't do anything, 'cause I didn't do anything." (Canto had previously told Higgins to forget anything he had said to her.) Telephone records confirmed the telephone calls. Priest also testified to having talked to both men by cell phone, and the defendant admitted to having had a conversation with Priest at Riverside Motors about what to say before the grand jury. The defendant also admitted to having referred to the investigation as a "witch hunt."

Maryann Rooney's testimony about the scope of the police harassment was consistent with Priest's testimony that Canto made the same offer to the defendant he had made to other members of the department. The offer was well known in the department. Indeed, on at least one occasion, Canto made the offer in the hearing of three officers, all of whom testified. Evidence that the defendant was not only the union president but a close friend of Canto, and testified in support of Canto's dog at the hearing before the board of selectmen, supported Priest's testimony on the second count of the indictment. There is ample support for the judge's implicit determination that the defendant's testimony claiming Canto did not include him in the oft-repeated offer was not credible.

Higgins's testimony as to what she told the defendant is supported by evidence corroborating other aspects of her testimony, as set out above. The testimony of Priest and Bird that Canto made the offer in the presence of the three of them also supports her testimony.

This evidence was sufficient "clearly to turn the scale." *Commonwealth* v. *Silva*, 401 Mass. at 325, quoting from *Commonwealth* v. *Parker*, 2 Cush. 212, 223-224 (1848) (evidence including fact that a larceny took place, that Silva knew about the larceny, told a witness about it, and knew a civilian could identify him was "ample strong corroborating evidence"). "[C]onvictions for perjury may be based on evidence other than direct testimony," so long as it is clear and compelling. *Commonwealth* v. *Silva, supra* at 323. Circumstantial evidence may be clear and compelling. See, e.g., *Commonwealth* v. *Gil*, 393 Mass. 204, 219 (1984); *Commonwealth* v. *Morgan*, 30 Mass. App. Ct. 685, 692-693 (1991); *Commonwealth* v. *McColgan*, 31 Mass. App. Ct. 932, 935 (1991). An inference may also be compelling. See *Commonwealth* v. *Lavigne*, 42 Mass. App. Ct.

313, 317-318 (1997). The evidence in this case was sufficient to satisfy the quantitative rule as modified in accordance with the analysis in *Commonwealth* v. *Coleman*, 20 Mass. App. Ct. at 556-557. See *Commonwealth* v. *Silva*, 401 Mass. at 323-324.

The policy behind the rule requiring evidence of "a highly reliable order," *id.* at 323, quoting from *State* v. *Sanchez*, 204 Conn. 472, 480 (1987), is "to prevent a conviction of perjury when there is no evidence other than the word of one witness against that of the defendant." *Commonwealth* v. *Coleman*, 20 Mass. App. Ct. at 555, quoting from Perkins, Criminal Law 465 (2d ed. 1969). The quantum of proof in this case is consistent with that policy. There is much more than "the word of one witness against that of the defendant." *Commonwealth* v. *Coleman, supra.*

Nor is there any merit to the defendant's argument that there was insufficient evidence of perjury and subornation of perjury because Priest and Higgins were promised immunity. The defendant cites G. L. c. 233, § 20I, in support of this argument. However, that statute does not apply to the facts of this case because, although the witnesses in question may have been promised that they would not be prosecuted, neither one received the formal immunity under G. L. c. 233, § 20E, that § 20I addresses.

3. *Sufficiency of the evidence.* Given the foregoing analysis, it is clear that there was no error in the denial of the defendant's motion for required finding. The judgments, therefore, are affirmed.

*So ordered.*