Commonwealth *v*. George.

COMMONWEALTH *vs*. RICHARD T. GEORGE.

Essex. September 9, 1999. - October 20, 1999.

Present: ABRAMS, GREANEY, MARSHALL, & IRELAND, JJ.

*Rape. Limitations, Statute of. Statute,* Construction. *Due Process of Law,* Fair trial. *Constitutional Law,* Right to travel.

This court concluded that the tolling provision of G. L. c. 277, § 63, as amended through St. 1985, c. 123, which tolls the statute of limitations for "any period during which the defendant is not usually and publicly resident within the Commonwealth," applied to the crime of rape of a child. [278-280]

The application of the tolling provision of G. L. c. 277, § 63, to a criminal defendant, indicted in 1997 for crimes occurring between 1977 and 1979, did not violate the defendant's due process right to a fair trial, where the defendant failed to demonstrate actual prejudice to his defense caused by the delay in prosecution [281-282], nor did the application of the tolling provision, which was rationally related to the legitimate State purpose of investigating and prosecuting crime, unreasonably infringe upon the defendant's constitutional right to travel [282-284].

INDICTMENTS found and returned in the Superior Court Department on March 19, 1997.

Motions to dismiss were heard by *Robert H. Bohn, Jr.,* J., and the cases were heard by *Howard J. Whitehead,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*David W. Rifkin* for the defendant.

*Adam J. Bookbinder,* Assistant District Attorney, for the Commonwealth.

IRELAND, J. The defendant was indicted by an Essex County grand jury in March, 1997. Two indictments charged the defendant with three counts of rape of a child, and one indictment charged indecent assault and battery on a child under the age of fourteen years, all occurring between January, 1977, and January, 1979. The defendant moved to dismiss the indictments, arguing they were time-barred. In a written memorandum, a

Superior Court judge denied the motion.[1] Following a jury-waived, stipulated-evidence trial, the defendant was convicted on all charges. We granted the Commonwealth's application for direct appellate review of the defendant's appeals.

Arguing that his motion to dismiss the indictments should have been allowed, the defendant contends that (1) the portion of G. L. c. 277, § 63, which tolls the statute of limitations for "any period during which the defendant is not usually and publicly a resident within the commonwealth" (tolling provision) does not apply to the crime of rape of a child; and (2) application of the tolling provision in general violated his constitutional rights. For the reasons set forth below, we hold that the tolling provision of G. L. c. 277, § 63, is applicable to the crime of rape of a child. We further hold that application of the tolling provision to the defendant did not violate his constitutional rights. Accordingly, we affirm the convictions.

According to the victim's statement, the sexual assaults in question occurred in the summer of 1977 or 1978, when the victim was ten or eleven years old. The defendant was a coworker of the victim's father and had invited the victim to accompany him on a fishing trip to New Hampshire. It was during that trip that the assaults occurred. The victim did not come forward until January, 1997, first telling his family about the assaults and later reporting them to the authorities. At the time the indictments in this case were filed, the defendant was living in Florida and had not resided in Massachusetts since 1980.

At the time of the assaults, the statute of limitations provided:

"An indictment for murder may be found at any time after the death of the person alleged to have been murdered. An indictment for the crime or crimes set forth in sections seventeen, eighteen, nineteen and twenty-one of chapter two hundred and sixty-five [robbery and related crimes], or for conspiracy to commit such crime or crimes, or as accessory thereto, or any one or more of them may be found and filed within ten years of the date of commission of said crime or crimes. An indictment for any other crime shall be found and filed within six years after such crime or crimes has been committed; but any period during which the defendant is not usually and publicly

---

[1] The defendant filed two motions to dismiss that were considered and decided together by the motion judge.

resident within the commonwealth shall be excluded in determining the time limited."

G. L. c. 277, § 63, as amended through St. 1955, c. 781, § 1. As the crimes of rape of a child, G. L. c. 265, § 23, and indecent assault and battery on a child under the age of fourteen years, G. L. c. 265, § 13B, were not one of the crimes specified in the second sentence, they fell under the catchall "any other crime" category. The statute of limitations for both of those crimes was six years. Due to the tolling provision, however, the statute of limitations was tolled for both crimes from the time the defendant moved out of State in 1980.

In 1985, while the statute of limitations was still tolled on the defendant, the Legislature amended the statute. See St. 1985, c. 123.[2] The crime of rape of a child, among other crimes, was inserted in the second sentence of the statute, thus increasing the statute of limitations for that crime from six years to ten years. Because the statute of limitations for the crime of rape of a child was thereafter contained in the second sentence of the statute, it was no longer in the same sentence as the tolling provision. According to the interpretation urged by the defendant, this change rendered the tolling provision inapplicable to the crime of rape of a child, and the statute of limitations expired on that crime in 1995, ten years from the effective date of the amendment.

1. *Applicability of the tolling provision.* The defendant correctly points out the general rule that criminal statutes are to be strictly construed against the government. This rule arises out of the prohibition against vagueness and requires that "a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct in prohibited." *Commonwealth* v. *Twitchell,* 416 Mass. 114, 123 (1993), quoting *Kolender* v. *Lawson,* 461 U.S. 352, 357 (1983). See *Commonwealth* v. *Slome,* 321 Mass. 713, 715 (1947). Any ambiguities in penal statutes are to be strictly construed against the government. See *Commonwealth* v. *Wotan,* 422 Mass. 740, 742 (1996) (use of "repeatedly" as element of crime created ambiguity as to whether word meant more than once, as urged by the Commonwealth, or whether it meant at least three times, as

---

[2]The statute of limitations was further amended in 1987 and in 1996. See St. 1987, c. 489; St. 1996, c. 26. As neither of those amendments affects determination of the issues in this case, they need not be discussed.

urged by defendant — both interpretations were reasonable but rule of strict construction required interpretation in favor of defendant). Statutes of limitation do not define criminal conduct, are not penal statutes, and may not be subject to such strict construction against the Commonwealth. Cf. *Commonwealth* v. *Bargeron,* 402 Mass. 589, 594 (1988) (extension of statute of limitations was procedural, not substantive). Even under the strict.construction rule, however, "we do not reject 'an available and sensible interpretation . . . in favor of a fanciful or perverse one.' " *Commonwealth* v. *Richards,* 426 Mass. 689, 690 (1998), quoting *Commonwealth* v. *Wotan, supra* at 743.

Before the 1985 amendments, which added rape and other crimes to the category of crimes with a ten-year period of limitations, the statute of limitations had last been amended in 1955. Before the 1955 amendments,[3] the statute of limitations was comprised of only two sentences and provided:

> "An indictment for murder may be found at any time after the death of the person alleged to have been murdered. An indictment for any other crime shall be found and filed within six years after the crime has been committed; but any period during which the defendant is not usually and publicly resident within the commonwealth shall be excluded in determining the time limited."

G. L. (Ter. Ed.) c. 277, § 63. Thus, prior to 1955 there existed only two categories of statutes of limitations for crimes: murder, for which there was no statute of limitations, and all other crimes, for which there was a six-year statute of limitations, which was tolled during any period the defendant did not reside in Massachusetts. The 1955 amendment created a new, third category of crimes, at that time only robbery and related crimes, with a ten-year statute of limitations. The amendment accomplished this by inserting a new sentence into the middle of the statute.[4] The Legislature did not otherwise amend the statute, thereby leaving the tolling provision attached, by a semicolon, to the "any other crime" category. The tolling provision, which up to that point had applied to all crimes except murder, was

---

[3]Indeed, the statute in that form dates back much earlier. See, e.g., Rev. St. (1836), c. 136, § 16.

[4]The 1985 amendments merely added rape and other crimes to the inserted middle sentence.

not directly connected to the new sentence. We think this is indicative not of intent to remove the specified crimes from the ambit of the tolling provision, but was instead simply a lengthening of the statute of limitations relating to certain crimes. *Commonwealth* v. *Bargeron,* 402 Mass. 589, 592 (1988) (principal thrust of 1955 amendment to § 63 was extension of time period and purpose of 1985 amendment was "simply the addition of new crimes to the list of those which carried a ten-year statute of limitations"). Indeed the legislation ultimately adopted as law was titled "An Act extending the statute of limitations relating to robbery and certain related crimes." 1955 Senate Doc. No. 868. See 1955 House Doc. No. 3173. A semicolon is sometimes used in an inartful manner. Properly read, however, this semicolon acts as a period and concludes the "any other crime" statute of limitations, and the tolling clause is an independent provision which applies to the previous limitations provisions.

Reading the tolling provision to apply only to the last sentence would lead to an absurd result — the defendant could not be prosecuted on the rape of a child charges but could still be prosecuted on the less serious charge of indecent assault. See *Champigny* v. *Commonwealth,* 422 Mass. 249, 251 (1996), quoting *Attorney Gen.* v. *School Comm. of Essex,* 387 Mass. 326, 336 (1982) ("We will not adopt a literal construction of a statute if the consequences of such construction are absurd or unreasonable"); *Lexington* v. *Bedford,* 378 Mass. 562, 570 (1979), quoting *Bell* v. *Treasurer of Cambridge,* 310 Mass. 484, 489 (1941) ("A literal construction of statutory language will not be adopted when such a construction will lead to an absurd and unreasonable conclusion, and the language to be construed 'is fairly susceptible to a construction that would lead to a logical and sensible result' "). While reiterating the maxim that criminal limitations statutes are to be construed liberally in favor of repose, see *United States* v. *Habig,* 390 U.S. 222, 227 (1968), we decline to adopt such an absurd reading of the statute, and hold the tolling provision is applicable to the crime of rape of a child.

2. *Constitutional analysis.*[5] Having determined that the tolling provision applies to the crime of rape, we turn now to the

[5]Although the defendant does not refer to a specific provision of the Massachusetts Declaration of Rights, he argues in a general way that his rights under the Massachusetts Constitution have been violated. The relevant tests

defendant's constitutional claims. The defendant claims that the tolling provision violated his due process right to a fair trial because the eighteen to twenty year delay in filing the indictments prejudiced his ability to defend himself. The defendant also contends that the tolling provision infringes on the right to travel because it places a greater burden on defendants who leave the State.

a. *Due process.* In order to be entitled to dismissal of the indictments due to a preindictment delay, the defendant must demonstrate that he suffered substantial, actual prejudice to his defense, and that the delay was intentionally or recklessly caused by the government. See *United States* v. *Marion*, 404 U.S. 307, 324 (1971); *Commonwealth* v. *Patten*, 401 Mass. 20, 21 (1987); *Commonwealth* v. *Best*, 381 Mass. 472, 484 (1980); *Commonwealth* v. *Imbruglia*, 377 Mass. 682, 688 (1979).

At the time he moved to dismiss the indictments, the defendant filed an affidavit in which he averred his case was prejudiced due to the loss of certain evidence. The motion judge assumed the affidavit established actual prejudice, but went on to conclude the defendant's due process claim failed because the defendant had made neither a claim nor a showing of intentional or reckless delay by the government.[6]

Unlike the motion judge, we do not assume that the defendant has shown prejudice. Rather, we conclude that the loss of the evidence did not constitute actual prejudice,[7] let alone the "severe prejudice" needed to justify the "drastic remedy" of

under both the Federal and the State Constitutions are the same. See *Commonwealth* v. *Patten*, 401 Mass. 20, 21 (1987) (same test under State or Federal Constitution to show denial of due process due to preindictment delay); *Commonwealth* v. *Franklin Fruit Co.*, 388 Mass. 228, 235 (1983) (standard of review for equal protection or due process challenges to statutes is same under "Fourteenth Amendment to the Federal Constitution as under the cognate provisions of the Massachusetts Declaration of Rights").

[6]The defendant now argues that prejudice alone should be sufficient to constitute a denial of due process when the pre-indictment delay is substantial and when there is no justification for the delay, i.e., the delay has been caused by failure of the victim to come forward. Because we conclude the defendant did not demonstrate actual prejudice, we have no occasion to revisit our established rule.

[7]In his affidavit, the defendant contended that a witness, who would have verified the fishing trip, had died and two pieces of documentary evidence, a boat rental receipt and a three-day fishing license, had been lost or destroyed. Because the victim claimed that the two never actually went fishing, the defendant contends this lost evidence would have undermined the victim's

dismissal of the indictments. *Commonwealth* v. *Fayerweather*, 406 Mass. 78, 87 (1989). Finding no demonstrated prejudice, we hold the defendant's right to a fair trial was not violated.

b. *Right to travel*. The defendant claims the tolling provision impairs his right to travel — a right that he claims arises out of the privileges and immunities clause and the equal protection clause. The United States Supreme Court has recognized that all citizens have the right "to travel throughout the . . . land uninhibited by statutes, rules, or regulations that unreasonably burden or restrict this movement." *Shapiro* v. *Thompson*, 394 U.S. 618, 629-630 (1968). See *Jones* v. *Helms*, 452 U.S. 412, 418-419 (1980) (right to travel arises out of privileges and immunities clause of Fourteenth Amendment to United States Constitution, or out of due process clause of Fifth or Fourteenth Amendment); *Fiorentino* v. *Probate Court*, 365 Mass. 13, 18 (1974 (statute which burdened right to travel violated due process and equal protection). The tolling provision does not, however, unreasonably infringe on a defendant's right to travel because (1) a defendant's right to travel is qualified by his criminal conduct within the State; and (2) the tolling provision serves a legitimate State purpose.

In *Jones* v. *Helms*, 452 U.S. 412 (1981), the United States Supreme Court upheld a Georgia statute against a right to travel challenge. The Georgia statute provided that any parent who abandoned a child and remained in the State would be guilty of a misdemeanor, but any parent who abandoned a child and left the State would be guilty of a felony. See *id.* at 414 n.2. The Supreme Court held the defendant's criminal conduct within a State necessarily qualified his right to travel. See *id.* at 421.[8] The Supreme Court further stated that a State has the authority to place restrictions on an offender's right to travel, if the restric-

credibility. The defendant does not, however, state how the deceased witness, who was a Massachusetts resident, would have verified the fishing trip. Further, the receipt and fishing license could have been for any fishing trip to New Hampshire, and would not prove that the defendant ever went fishing with the victim. The defendant has not demonstrated that he was prejudiced by the loss of this evidence.

[8]The Supreme Court distinguished the Georgia statute from cases such as *Shapiro* v. *Thompson*, 394 U.S. 618 (1969), in which the Supreme Court had struck down State statutes imposing durational residency requirements in order to receive government benefits. See *Jones* v. *Helms*, 452 U.S. 412, 421 (1981). The Supreme Court stated that "[i]n all of those cases, the statute at issue imposed a burden on the exercise of the right to travel by citizens whose right to travel had not been qualified in any way. In contrast, in this case, [the

tion "is rationally related to the offense itself — either to the procedure for ascertaining guilt or innocence, or to the imposition of a proper punishment or remedy." *Id.* at 422. The Supreme Court then concluded that the enhancement provision was rationally related to the legitimate State purpose of causing parents to support their children. See *id.* at 423; *id.* at 427 (Blackmun, J., concurring).

We believe the same reasoning and analysis apply here. First, a defendant's right to leave the State is qualified by the commission of a crime within the State. Additionally, Massachusetts has a significant interest in investigating and prosecuting crime. The Legislature could have rationally concluded that defendants who leave a State after the commission of a crime present additional difficulties to the State in the pursuit of that purpose. As the California Supreme Court noted in a decision upholding a similar tolling provision, a State "has an interest in assuring that the defendant is available locally not only to enhance the possibility of detection but also to avoid the burdens of extradition proceedings, should he be charged, his whereabouts become known, and he refuses to return voluntarily." *Scherling* v. *Superior Court*, 22 Cal. 3d 493, 501 (1978). See *Jones* v. *Helms*, *supra* at 422 n.18. The State's interest in assuring that a criminal defendant is available locally in order to facilitate detection and prosecution of crime is sufficient to justify whatever restriction the tolling provision places on a defendant's qualified right to leave the State. Stated another way, the tolling provision rationally facilitates the legitimate State purpose of investigating and prosecuting crime.

While the defendant does not dispute the State's legitimate interest, he argues that the tolling provision does not serve that purpose in cases such as his. Because the delay in bringing the indictments was due only to the delay in the victim's coming forward with the charges, because modern communications and technology make it easy to locate persons who are living openly in other States, and because of the modern interstate rendition acts, neither detection, investigation, nor prosecution of these crimes was in any manner impaired because the defendant resided out of State. The defendant therefore argues that the tolling provision should be applied only to those defendants who leave the State with the purpose of secreting themselves or

defendant's] criminal conduct within the State of Georgia necessarily qualified his right thereafter freely to travel interstate." *Id.*

avoiding prosecution, thereby affecting the State's ability to locate and prosecute them. We note that an out-of-State defendant, even one who does not secrete himself, may present additional difficulties to State authorities in the discovery and investigation of crime. Second, and more fundamentally, we also note that the defendant's arguments as to a less restrictive alternative are misplaced. Under rational basis review, which we conclude is the appropriate standard of review, the Legislature is not required to "create statutory classifications with surgical precision." *Opinion of the Justices,* 408 Mass. 1215, 1224 (1990). "It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." *Zeller* v. *Cantu,* 395 Mass. 76, 84 (1985), quoting *Williamson* v. *Lee Optical of Okla., Inc.,* 348 U.S. 483, 487-489 (1955).

*Judgments affirmed.*