APPEALS COURT 
 
 COMMONWEALTH vs. EDGAR ANDRE [1]

 
 Docket:
 23-P-744
 
 
 Dates:
 November 5, 2024 – September 4, 2025
 
 
 Present:
 Rubin, Shin, & Hodgens, JJ.
 
 
 County:
 Suffolk
 

 
 Keywords:
 Rape. Due Process of Law, Delay in commencement of prosecution, Statute of limitations. Limitations, Statute of. Evidence, Expert opinion, Qualification of expert witness, Relevancy and materiality. Witness, Expert. Practice, Criminal, Delay in commencement of prosecution
 
 

             Indictments found and returned in the Superior Court Department on September 28, 2016. 
            A motion to dismiss was heard by Christopher J. Muse, J.; a renewed motion to dismiss was heard by Sarah Weyland Ellis, J., and the cases were tried before her. 
            Robert A. George (James S. Dilday also present) for the defendant.
            Molly Paris, Assistant District Attorney (Ursula Knight, Assistant District Attorney, also present) for the Commonwealth.
            RUBIN, J.  The defendant was convicted of three counts of rape (digital and oral) of a person under sixteen years of age in violation of G. L. c. 265, § 23.  He now appeals.
            The rapes occurred between 1990, when the victim was eight years old, and 1994.  They began after the defendant became the victim's stepfather, marrying the victim's mother.
            The victim first reported the digital rape and that the defendant had touched her leg while she was sleeping to her family physician, Dr. Barbara Mendes, on July 19, 1995, when she was twelve years old.  Dr. Mendes filed a report with the Department of Social Services (department), the agency now known as the Department of Children and Families.
            After the victim told her doctor about the abuse, the department became involved and the defendant stopped molesting the victim, according to the victim's testimony.  Social workers spoke with the victim, her mother, her grandmother, and the defendant, and implemented a safety plan that involved changes to the living arrangements in the home.  This included changing the floor on which the victim slept and the installation of locks on certain doors inside the home.  No criminal charges against the defendant were brought at the time.
            The statute of limitations for the crime at the time it was committed was ten years, and if the victim was under sixteen years old, this limitations period did not begin to run until the victim turned sixteen years old or the crime was reported to law enforcement, whichever occurred first.  See G. L. c. 277, § 63, as amended by St. 1987, c. 489.  The limitations period was extended by the Legislature in 1996.  See G. L. c. 277, § 63, as amended by St. 1996, c. 26.  The Legislature eliminated the limitations period effective December 20, 2006, but required "independent evidence that corroborates the victim's allegation" for indictments and complaints filed more than twenty-seven years after the commission of the offense.  G. L. c. 277, § 63, as amended by St. 2006, c. 303, § 9.  See Commonwealth v. Buono, 484 Mass. 351, 362-364 (2020) (grand jury could indict where prosecutor offered corroborating evidence of child rapes committed thirty-five years before).
            In August 2015, within that twenty-seven-year time period, the now-adult victim went to the Boston police and reported the crimes.  That led to the indictments in this case.  In this, his direct appeal, the defendant raises a number of claims.
            1.  Due process and justice without delay.  The defendant brought two motions to dismiss in the trial court alleging violations of his right to due process under the Fourteenth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights and to justice without delay under art. 11 of the Massachusetts Declaration of Rights, due to the length of time between the abuse, his indictment, and his trial.  He renews those arguments here.
            Although there was an exceptional delay in this case prior to indictment, we do not accept the defendant's argument that this prosecution, due to the length of the delay, was inherently unfair.  The Supreme Judicial Court has allowed trials to go forward after similarly long delays, holding that the delay did not violate due process.  See, e.g., Commonwealth v. George, 430 Mass. 276, 281-282 (1999) (preindictment delay of eighteen to twenty years).  We therefore apply the ordinary test articulated by the Supreme Judicial Court for evaluating the delay, as that court did in George.  See id.
            As the Supreme Judicial Court has explained, in assessing preindictment delay, the "[d]ue process inquiry must first focus on whether the defendant has suffered actual prejudice due to the delay."  Commonwealth v. Imbruglia, 377 Mass. 682, 688 (1979).  "Proof of prejudice is a necessary, but not sufficient element of a due process claim."  Id. at 691.  If prejudice is shown, the reasons for the delay must be considered, and if the "delay has been intentionally undertaken to gain a tactical advantage over the accused or has been incurred in reckless disregard of known risks to the putative defendant's ability to mount a defense, dismissal is appropriate."  Id.  Thus, ultimately, "[a] defendant seeking dismissal of an indictment due to preindictment delay 'must demonstrate that he suffered substantial, actual prejudice to his defense, and that the delay was intentionally or recklessly caused by the government.'"  Commonwealth v. Dame, 473 Mass. 524, 530-531, cert. denied, 580 U.S. 857 (2016), quoting George, 430 Mass. at 281.
            Failure to demonstrate either prong is fatal to a due process claim based on preindictment delay.  We begin by examining them each in turn.
            a.  Prejudice from the preindictment delay.  We agree with both motion judges that the defendant has failed to establish substantial, actual prejudice to his defense.  In arguing that he was prejudiced, the defendant points to several pieces of evidence that were lost.  Tufts New England Medical Center (Center) was no longer able to locate records concerning the victim's sexual assault evaluation in 1995 or 1996 and records of interviews, therapy, counseling, and testing of the defendant conducted by the Center's personnel in regard to the victim's allegations.  The defendant also argues that handwritten department records suggest that the department may have lost additional records of the investigation of the allegations.  However, "[a] defendant must show, on concrete evidence, and not simply by a fertile imagination, a reasonable possibility that access to the lost items would have produced evidence favorable to his cause."  Commonwealth v. Patten, 401 Mass. 20, 22 (1987).  The defendant has not provided any reason to conclude that any of this material would have been exculpatory.
            The defendant's trial counsel also filed an affidavit asserting that the defendant's own memory of his conversations with the victim and her mother at the time had faded.  The first motion judge concluded that the affidavit was self-serving, particularly in light of the fact that it was not clear at the time of the first motion whether the defendant would even testify.  Ultimately, he did testify.  But, at trial, he at least remembered enough about his conversations with the victim and her mother to testify that, on one occasion, the victim told him that he was not her father and that, when the victim's mother confronted him with the allegations, he told her that he did not abuse the victim.
            The defendant notes that the victim's primary caregiver, her maternal great-grandmother, died in the interim, and could not testify.  To begin with, she died eight months before the victim reported the abuse to her doctor, so the victim's great-grandmother would have been unavailable even if the Commonwealth had pursued this case immediately after the victim had disclosed the abuse.  In any event, the testimony of the victim, who provided the only account of the abuse, made clear that the great-grandmother was not a witness to any of them.  Thus, although she might have described circumstances with respect to the victim or the household, she would not have been in a position to dispute the victim's specific claims about the defendant's conduct.
            Since the defendant has not shown "a reasonable possibility that access to the lost items would have produced evidence favorable to his cause," he has failed to establish prejudice that would justify dismissing the indictments against him due to the preindictment delay.  Patten, 401 Mass. at 22.
            b.  Intentional or reckless conduct causing the delay.  As to intentional or reckless conduct, there is no evidence that the Commonwealth intentionally or recklessly caused this delay.  See Imbruglia, 377 Mass. at 691.  The defendant asserts that there are no records explaining why the criminal investigation was terminated at the time the allegations came to light.  At trial, however, the victim's mother testified that, at the time of the initial disclosure by her then-minor daughter, she sabotaged the department's investigation with answers to the department's questions that might have misdirected them.  She testified that she did not want the department to investigate because she felt intimidated by the defendant, she feared the defendant would retaliate against the victim, she had difficulty disclosing the allegations to her family, and she was afraid that doing so might bring shame upon the family.  In litigating the first motion to dismiss brought by the defendant, the Commonwealth provided the Superior Court with an unsigned letter dated December 18, 1996, from an assistant district attorney to a department employee, noting that the victim's mother had refused to cooperate with the district attorney's office by failing to respond to repeated requests to speak with them concerning her daughter's allegations.  The Commonwealth also provided what the first motion judge referred to as excerpts of testimony before the grand jury supporting the Commonwealth's contention that the case was originally closed because the victim was a juvenile and the mother did not want to go forward with the prosecution.
            There is no evidence that the delay was intentionally caused to gain tactical advantage.  Indeed, there is no evidence that the police planned to prosecute the defendant at all prior to the victim's going to the police in 2015.  For this independent reason, it cannot be shown that the delay was for tactical advantage.  Nor is there evidence that the failure to proceed in 1996 was a result of recklessness.
            The defendant suggests that it was the victim's delay in not coming forward again until 2015 that was intentional or reckless.  Even if we assume without deciding that her intent is relevant to this calculus, there is no indication in the record provided to us that an evidentiary hearing was sought to determine the basis for the entire length of the victim's delay.
            In the absence of any evidence that the victim's failure to take action prior to the time that she did was reckless, let alone intentionally designed to disadvantage the defendant, there is not only a failure to demonstrate that the defendant met the requirement of showing prejudice, there is also an insufficient basis for the claim that the delay was intentional or reckless.  See Imbruglia, 377 Mass. at 691.  As failure to demonstrate either prong is fatal to the defendant's claim, his due process argument regarding the preindictment delay fails.  See id.
            c.  Postindictment delay.  The defendant also raises before us a claim about the postindictment delay prior to trial.  Article 11 of the Massachusetts Declaration of Rights guarantees criminal defendants a right to a speedy trial.  See Commonwealth v. Dirico, 480 Mass. 491, 505 (2018).  Speedy trial analysis is triggered when an accused "allege[s] that the interval between" formal accusation "and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay."  Commonwealth v. Butler, 464 Mass. 706, 709-710, 712 (2013), quoting Doggett v. United States, 505 U.S. 647, 651-652 (1992).  See Commonwealth v. Wallace, 472 Mass. 56, 60 (2015).  Once a defendant establishes that the delay has gone on long enough to be presumptively prejudicial, our "courts apply the four-factor [Barker v. Wingo, 407 U.S. 514 (1972)] test" to determine whether the defendant's speedy trial right has been violated.  Butler, supra at 710.  Under this test, we consider "(i) the length of the delay, (ii) the reasons for delay, (iii) the defendant's assertions of his speedy trial right, and (iv) the prejudice to the defendant."  Id. at 715.
            Here, although the defendant's second motion to dismiss referenced the period between the first motion to dismiss and the trial date, it presented no argument with respect to that time period, and the argument here, therefore, is waived.  See Commonwealth v. Randolph, 438 Mass. 290, 294 (2002).
            In any event, the defendant has provided no information with respect to what part or parts of that delay are attributable to the Commonwealth, see Wallace, 472 Mass. at 61, quoting Commonwealth v. Carr, 464 Mass. 855, 861 (2013) (noting that "delays requested or otherwise orchestrated by the defendant" weigh against defendant, rather than Commonwealth, in speedy trial analysis), nor what efforts he took to assert his right to a speedy trial.  The defendant has also pointed to nothing, other than the length of the postindictment delay, suggesting that this delay prejudiced him.  See Wallace, supra at 60 ("The presumption of prejudice derived from a delay cannot be the sole basis of a speedy trial claim . . .").  Consequently, regardless of whether we would review for prejudicial error or a substantial risk of a miscarriage of justice, the claim fails.  See Dirico, 480 Mass. at 505 ("The burden is on the defendant to demonstrate prejudicial delay sufficient to warrant dismissal of the indictments against him").
            2.  Uncharged conduct.  The defendant next objects to the admission of evidence of his uncharged conduct.  The trial judge allowed the victim to testify that the defendant's inappropriate behavior began with him kissing her "open mouthed" and to testify to an event in which she awoke to the defendant touching her thigh.  She testified, also, to a series of other times when she awoke to her pajamas being untied, and these events, together, led her to write a note that she put next to her before going to sleep, saying that if the defendant did not stop touching her, she would call the police.  The introduction of this evidence was objected to, and we therefore review "to determine whether there was an abuse of discretion and, if so, whether it amounted to prejudicial error."  Commonwealth v. Chalue, 486 Mass. 847, 866 (2021).
            It is, of course, black letter law that evidence of past uncharged conduct may not be introduced to demonstrate that a defendant has a "propensity to commit the crime[s] charged" and that in engaging in the charged conduct the defendant was acting in accord with it.  Commonwealth v. Gibson, 489 Mass. 37, 46 (2022), quoting Commonwealth v. Helfant, 398 Mass. 214, 224 (1986).  Uncharged conduct, though, may be admitted for other reasons.  See Gibson, supra.  In this case, there was no abuse of discretion in the admission of this evidence "to show a pattern of conduct, intent, and the relationship between [the] defendant and" the victim.  Commonwealth v. Centeno, 87 Mass. App. Ct. 564, 567 (2015), quoting Commonwealth v. Santiago, 52 Mass. App. Ct. 667, 679 (2001).
            The defendant argues that, even if the evidence was admitted not to show propensity or bad character, its admission, nonetheless, was improper because the risk of unfair prejudice from the evidence outweighed its probative value.  See Gibson, 489 Mass. at 46.  Again, this is a question committed to the sound discretion of the trial judge.  See Commonwealth v. Hinds, 494 Mass. 681, 688-689 (2024).  We conclude there was no abuse of discretion in the trial judge's conclusion that the risk of unfair prejudice did not outweigh the probative value of the evidence.
            3.  Expert testimony.  A Commonwealth expert on developmental psychology, specifically as it relates to child abuse, children's memory of trauma, and children's disclosures of abuse, Dr. Stephanie Block, testified that children who suffer sexual abuse often delay disclosing this abuse and will only disclose part of the abuse the first time they speak about it.  She explained some of the reasons that children do this, the process of forming, storing, and retrieving memories, and how trauma affects that process.  In a final argument, the defendant avers that the expert was not properly qualified, that her testimony was unreliable, and that she should not have been allowed to testify, given that, by her own admission, she knew nothing about the facts of this particular case.
            To take the last concern first, as Dr. Block was qualified as an expert on the general topic of delayed disclosure by children of sexual abuse, it was immaterial whether she had any knowledge of the facts of this particular case.  See Commonwealth v. Alvarez, 480 Mass. 299, 312 (2018).  See also Commonwealth v. Velazquez, 78 Mass. App. Ct. 660, 667 (2011).  Indeed, in light of the expert's lack of such knowledge, the trial judge precluded any questioning of her about the particular disclosures and nondisclosures in this case, and any such testimony comparing the victim and facts of this case to "general behavioral characteristics of sexually abused children" likely would have been inadmissible.  Alvarez, supra.
            As for the expert's qualifications, she was an associate professor of psychology at the University of Massachusetts at Lowell.  She specialized in child abuse, children's memory of trauma, and children's disclosures of abuse and neglect.  She had a Ph.D. from the University of California at Davis in psychology, specializing in developmental psychology.  She had testified previously as an expert approximately one hundred times.  She testified that, as a result of her education, training, experience, and research, she was "familiar with the dynamics of child sexual abuse and the way children who are sexually abused may talk or not talk about the abuse."  There was no abuse of discretion in qualifying her as an expert.  See, e.g., Commonwealth v. Frangipane, 433 Mass. 527, 533-535 (2001).
            Lastly, as for the expert's testimony, she described the use of anonymous surveys that supported conclusions about the fact that many victims of child sex abuse had never told anyone, and she described research examining factors related to children's decisions to delay disclosure or potentially not disclose.  This evidence, combined with the expert's testimony about her research methods, which included collecting information from people or records and conducting statistical analysis on that information, and that her research has been published in peer-reviewed journals, was sufficient to support the trial judge's conclusion that her testimony was reliable, a conclusion well within the scope of the judge's discretion.  See Commonwealth v. Hinds, 487 Mass. 212, 218, 220-222, 226 (2021), S.C., 494 Mass. 681 (2024).
Judgments affirmed.
 
footnotes

 
            [1] As is our custom, we spell the defendant's name as it appears in the indictments.